UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ X<br><br>HARBOUR ANTIBODIES BV and<br>HARBOUR ANTIBODIES HCAb BV,<br><br>            Plaintiffs,<br><br>v.<br><br>LEVERAGEN, INC.,<br><br>            Defendant.<br><br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ X | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.:  25-13004<br><br>   COMPLAINT AND<br>   <u>DEMAND FOR JURY TRIAL</u> |

The plaintiffs, Harbour Antibodies BV and Harbour Antibodies HCAb BV (collectively "Harbour Antibodies" or "plaintiffs"), for their complaint against the defendant, Leveragen, Inc. ("Leveragen" or "defendant"), state that:

<u>NATURE OF THE ACTION</u>

1.       In this action, the plaintiffs Harbour Antibodies seek to recover damages and a preliminary and permanent injunction against the defendant Leveragen for the defendant's infringement of U.S. Patent Nos. 8,921,522 ("the '522 Patent"), 9,346,877 ("the '877 Patent"), 8,921,524 ("the '524 Patent"), 9,353,179 ("the '179 Patent"), 10,906,970 ("the '970 Patent"), and 9,365,655 ("the '655 Patent"); and for unfair and deceptive acts or practices declared unlawful under M.G.L. ch. 93A, § 1, *et seq*. ("93A").

<u>JURISDICTION AND VENUE</u>

2.       This action arises under the United States Patent Act and Massachusetts law.

3.      This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), (b).  The Court also has supplemental jurisdiction over related claims arising under Massachusetts law under 28 U.S.C. 1367(a).

4.      This Court has personal jurisdiction over the defendant Leveragen as it has regular and consistent contacts with the Commonwealth of Massachusetts sufficient to confer personal jurisdiction.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## THE PARTIES

6.      The plaintiff Harbour Antibodies BV is a Dutch company with a place of business at CIC Rotterdam, Stationsplein 45, Unit A4.004 3013 AK Rotterdam, Netherlands.

7.      The plaintiff Harbour Antibodies HCAb BV is a Dutch corporation with a place of business at CIC Rotterdam, Stationsplein 45, Unit A4.004 3013 AK Rotterdam, Netherlands.

8.      Harbour Antibodies HCAb BV is a fully owned subsidiary of Harbour Antibodies BV, and they are referred to collectively as "Harbour Antibodies."

9.      The defendant, Leveragen, Inc. ("Leveragen"), is a Delaware corporation with a place of business at 2F Gill Street, Woburn, Massachusetts 01801.

## FACTUAL BACKGROUND

## THE PLAINTIFFS AND THEIR RIGHTS

10.      Harbour Antibodies was established in 2006 to develop, commercialize, license, and utilize transgenic mouse technology developed in the laboratory of Professor Frank Grosveld.  Such uses include engineering mice to produce high affinity human antibodies.

Harbour Antibodies is an innovator in the field of using rodents to produce soluble, antigen-specific $V_H$ binding domains or heavy chain only antibodies (HCAbs).  Harbour Antibodies produces HCAbs in vivo in transgenic rodents, including mice ("HCAb Platform" or "Harbour Mice®").  The produced HCAbs and Harbour Antibodies' HCAb Platform are used by plaintiffs' customers for therapeutic or research purposes, for example, to develop pharmaceutical products, therapies, and disease treatments.

11.    Harbour Antibodies' HCAb Platform is the world's first human HCAb transgenic mouse platform as well as the first clinically validated platform to generate fully human HCAb and fully human $V_H$ single domain antibodies.

12.    Harbour Antibodies license their HCAb Platform and Harbour Mice® to Nona Biosciences US, Inc. ("Nona"), a Massachusetts corporation.  Nona is a global biotechnology company that sells biotech/pharmaceutical services including antibody production, discovery, and engineering.  As part of its biotech/pharmaceutical services and in support thereof, Nona licenses and uses Harbour Antibodies' HCAb Platform at least by purchasing Harbour Mice® and use thereof for its antibody production, discovery, and engineering services.

13.    The plaintiffs have invested substantial resources into developing an impressive portfolio of bioscience technology and assets, providing therapies for diseases with unmet medical needs, and building a strong reputation in the industry.  As part of that investment, Harbour Antibodies acquired and licensed (including to Nona) patents that protect its HCAb Platform and methods of use thereof.

14.    Harbour Antibodies is the assignee and owner of U.S. Patent Nos. 8,921,522 ("the '522 Patent"), 9,346,877 ("the '877 Patent"), 8,921,524 ("the '524 Patent"), 9,353,179 ("the '179

Patent"), 10,906,970 ("the '970 Patent"), and 9,365,655 ("the '655 Patent") (Collectively the "Grosveld Patents"), which are directed to and protect its proprietary methods for generating HCAbs including but not limited to its HCAb Platform and Harbour Mice® live laboratory animals and uses thereof.

15.     An antibody is a protein produced by the immune system to identify and neutralize foreign pathogens such as bacteria, viruses, and even cancer cells.  Molecules targeted by antibodies are referred to as antigens.  Each antibody recognizes and binds to a specific molecular structure on the surface of the antigen, also known as an epitope.  Once the antibody binds to the antigen, it can trigger other components of the immune system to destroy the target molecule.

16.     The ability to produce antibodies designed to bind to a specific antigen is highly sought after and useful in drug development and therapeutic treatments.  As a result, there are expansive and competitive markets for methods and tools (e.g., Harbour Antibodies' HCAb Platform and Harbour Mice®) used to produce, discover, and design antibodies as well as services (e.g., those provided by Nona using Harbour Antibodies' HCAb Platform and Harbour Mice®) to produce, discover, and design antibodies.

17.     There are multiple classes of naturally occurring human antibodies, with a similar basic structure consisting of four polypeptide chains.  These four polypeptides are made up of two heavy chains and two light chains connected by disulfide bonds.  Each chain is a series of domains: light chains consist of one variable domain ($V_L$) and one constant domain ($C_L$), while heavy chains contain one variable domain ($V_H$) and three to four constant domains ($C_H1$, $C_H2$,

etc.).  The variable regions of the heavy and light chain are responsible for recognizing and binding the antibody to a specific antigen.

18.    Antibodies having the corresponding variable regions are generated by a body's B cells that have been activated after coming into contact with an antigen.  This natural process requires a body to be exposed to an antigen to enable selection for B cells expressing variable regions that produce antibodies with high binding affinity with the antigen.  This reactive nature is limiting in developing more universal or practical treatments or therapies.  In contrast, methods that proactively produce antibodies with variable regions already configured to bind to specific antigens can bypass, kickstart, or supplement the existing natural process and provide improved ways of treating, preventing, and curing diseases and other negative effects associated with a wide range of antigens.

19.    HCAbs contain heavy chain variable regions ($V_H$ regions) and may contain heavy chain constant regions ($C_H$ regions) but do not have associated light chains.  HCAbs are highly functional and retain the ability to bind to antigen and present many advantages.  Shown below is a reproduction from Nona's website showing a diagram of an example HCAbs.  The orange elements are heavy chain variable regions ($V_H$ regions) while the blue elements are heavy chain constant regions ($C_H$ regions).



https://nonabio.com/hcab/

20.      While heavy-chain only antibodies (HCAbs) occur naturally in camelids and cartilaginous fish, they do not in humans.  HCAbs are smaller in size (approximately half size) and more suitable for designing bispecific or multi-specific antibodies.  Heavy chain-only antibodies can be designed to bind to epitopes (antigen part) that conventional antibodies cannot access.  HCAbs also demonstrate strong antigen-binding affinity and are stable. HCAbs can possess IgG-like pharmacokinetic (PK) properties and Fc-domain functions.

21.      Because of the advantages that HCAbs have over conventional antibodies, there is a need and interest to develop methods for generating human HCAbs that could be engineered and used for therapeutic and related purposes, in particular, HCAbs with a $V_H$ region configured to target and bind to a specific antigen.

22.      To overcome certain limitations of nature, the Grosveld Patents disclose, claim, and protect embodiments of methods wherein a transgenic mouse (or another rodent) expressing a heterologous $V_H$ heavy chain locus is immunized with an antigen to express an HCAb that would bind to the antigen.  In other words, a manner of creating an HCAb with a $V_H$ region

designed to target a particular antigen is a highly useful resource in drug development, in therapeutics, and in diagnostic and analytical testing.

23.    A transgenic non-human mammal (e.g., mouse) is disclosed in the Grosveld Patents and is claimed and protected in at least one claim of the Grosveld Patents.

24.    The Grosveld Patents resulted from laboratory work that identified and overcame numerous challenges to demonstrate that transgenic mice could produce HCAbs that include human $V_H$ regions.  For example, transgenic murine B cells express HCAbs at an early stage in B cell development, and the inventors first had to ensure that the murine B cells would grow and differentiate properly to produce HCAbs with the desired specificity.  The inventors also had to ensure that the resulting HCAbs were sufficiently soluble to be functional.

25.    The Grosveld Patents disclose and claim a method utilizing a non-human mammal comprising a heterologous $V_H$ heavy chain locus that includes a variable region comprising $V_H$ gene segments, at least one D gene segment, and at least one J gene segment, the gene segments being capable of recombining to form a VDJ coding sequence.  The heterologous $V_H$ heavy chain locus further includes at least one heavy chain constant region that does not encode a functional $C_H1$ domain and is responsible for joining the heavy and the light chains of an antibody.  The heterologous $V_H$ heavy chain locus resulting from recombination of the V, D, and J gene segments are cloned (after maturation) and used to produce an antigen specific $V_H$ binding domain.

26.    Reproduced below is a diagram from Nona's website illustrating composition of an HCAb produced by or included in the disclosures of the Grosveld patents.



https://nonabio.com/hcab/

27.    Methods in the Grosveld Patents and Harbour Antibodies' HCAb Platform improve upon conventional methods of producing antigen-specific HCAbs and offer a number of benefits, including the production of in vivo-derived HCAbs with critical quality attributes such as stability, solubility, and high affinity.

28.    As a non-limiting example, claim 1 of the '522 Patent is reproduced here:

A method for the production of a soluble, antigen-specific $V_H$ binding domain comprising:

a.  immunising a transgenic mouse expressing a heterologous $V_H$ heavy chain locus with an antigen wherein:

    i.  the $V_H$ heavy chain locus comprises a variable region comprising at least one naturally occurring human $V_H$ gene segment, at least one D gene segment, at least one J gene segment and at least one heavy chain constant region;

    ii.  each constant region does not encode a functional $C_H1$ domain;

    iii.  the $V_H$ gene segment, D gene segment and J gene segment are capable of recombining to form a VDJ coding sequence;

    iv.  the recombined $V_H$ heavy chain locus, when expressed upon antigen challenge, is capable of forming a soluble, heavy chain-only antibody comprising a soluble, antigen-specific $V_H$ binding domain and a constant effector region devoid of a functional $C_H1$ domain with an antigen;

b.  cloning a $V_H$ locus resulting from recombination between single V, D and J gene segments encoding a soluble, antigen-specific $V_H$ binding domain from an antibody-producing cell of said immunised transgenic mouse after affinity maturation via somatic mutation; and

c.  producing said soluble, antigen specific VH binding domain from the clone of step b.

<u>The Grosveld Patents</u>

29.    On December 30, 2014, U.S. Patent No. 8,921,522 ("the '522 Patent"), entitled "Binding Molecules," issued.  A copy of the '522 Patent is being filed herewith as Exhibit A. The '522 Patent is a continuation of U.S. Patent Application No. 11/658,361, which is a National Stage Entry of PCT Patent Application No. PCT/GB2005/002892 filed July 22, 2005.

30.    On December 30, 2014, U.S. Patent No. 8,921,524 ("the '524 Patent"), entitled "Binding Molecules," issued.  A copy of the '524 Patent is being filed herewith as Exhibit B. The '524 Patent is a continuation of U.S. Patent Application No. 11/658,361 which is a National Stage Entry of PCT Patent Application PCT/GB2005/002892 filed July 22, 2005.

31.    On May 24, 2016, U.S. Patent No. 9,346,877 ("the '877 Patent"), entitled "Binding Molecules," issued.  A copy of the '877 Patent is being filed herewith as Exhibit C. The '877 Patent is a continuation of U.S. Patent Application No. 12/645,653 (issued as the '522 Patent), which is a continuation of U.S. Patent Application No. 11/658,361, which is a National Stage Entry of PCT Patent Application PCT/GB2005/002892 filed July 22, 2005.

32.    On May 31, 2016, U.S. Patent No. 9,353,179 ("the '179 Patent"), entitled "Binding Molecules," issued.  A copy of the '179 Patent is being filed herewith as Exhibit D. The '877 Patent is a continuation of U.S. Patent Application No. 12/645,684 (issued as the '524 Patent), which is a continuation of U.S. Patent Application No. 11/658,361 which is a National Stage Entry of PCT Patent Application PCT/GB2005/002892 filed July 22, 2005.

33.    On February 2, 2021, U.S. Patent No. 10,906,970 ("the '970 Patent"), entitled "Methods of making heavy chain only antibodies using transgenic animals," issued.  A copy of the '970 Patent is being filed herewith as Exhibit E.  The '970 Patent is a continuation of U.S.

Patent Application No. 13/013,156, which is a continuation of U.S. Patent Application No.

12/645,653 (issued as the '522 Patent), which is a continuation of U.S. Patent Application No.

11/658,361, which is a National Stage Entry of PCT Patent Application PCT/GB2005/002892

filed July 22, 2005.

34.    On June 14, 2016, U.S. Patent No. 9,365,655 ("the '655 Patent"), entitled

"Soluble heavy-chain only antibodies," issued.  A copy of the '655 Patent is being filed herewith

as Exhibit F.  The '655 patent is a continuation of U.S. Patent Application No. 13/259,472,

which is a National Stage Entry of PCT Patent Application PCT/GB2010/000500 filed March

19, 2010.

35.    U.S. Patent Nos. 8,921,522 ("the '522 Patent"), 9,346,877 ("the '877 Patent"),

8,921,524 ("the '524 Patent"), 9,353,179 ("the '179 Patent"), 10,906,970 ("the '970 Patent") and

9,365,655 ("the '655 Patent") are collectively referred to herein as "Patents-in-Suit" or

"Grosveld Patents."

36.    Harbour Antibodies own the entire right, title, and interest in the Patents-in-Suit,

and such ownership rights are confirmed by assignments recorded in the United States Patent and

Trademark Office.

37.    Harbour Antibodies provides licenses to the Grosveld Patents for use of the

patented methods and non-human mammals (e.g., Harbour Antibodies' HCAb Platform and

Harbour Mice®) to provide and sell services including and related to antibody production,

discovery, and engineering.

38. Harbour Antibodies sells products produced by the patented methods and the patented non-human mammals (e.g., Harbour Antibodies' HCAb Platform and Harbour Mice®) to clients worldwide, including within the United States.

## THE DEFENDANT AND ITS INFRINGEMENT OF PLAINTIFFS' RIGHTS

39. Harbour Antibodies' patented HCAb Platform and Harbour Mice® have significant capability and potential to generate therapeutic antibodies and accelerate drug discovery and development, which has been validated through more than 40 licenses to pharmaceutical and biotechnology companies, including Nona, as well as academic institutions. As a non-limiting example, Nona utilized Harbour Antibodies' patented HCAb Platform and Harbour Mice® in diverse applications, such as a plug-and-play platform, including bi/multi-specific antibodies, CAR-T therapies, antibody-drug conjugates (ADC), mRNA technologies, and diagnostic imaging.

40. The defendant, Leveragen, Inc. ("Leveragen"), is a Woburn, Massachusetts-based biotech company specializing in genetic engineering.

41. Leveragen sells and offers for sale a platform ("SSM platform") for generating single-domain antibodies, advertised on Leveragen's website as NANOBODIES®. Leveragen's platform includes a Singularity Sapiens Mouse (SSM), which is, according to Leveragen's materials, capable of and used to exclusively generate heavy chain antibodies or HCAbs from the complete human $V_H$ repertoire integrated into the mouse Igh locus. Pages from Leveragen's website promoting and describing its SSM platform are attached hereto as Exhibit G.

42. Leveragen's website further advertises "prioritizing candidates that have undergone antigen-driven clonal selection and affinity maturation." Affinity maturation is a

process of enhancing antigen binding specificity of an antibody in vivo.  Leveragen further advertises under a press release referenced on Leveragen's website, that it "generates fully human single-domain antibodies through in vivo maturation."

43.     Leveragen's website further advertises that its "proprietary collection of nanobody mice, the Singularity Suite, features Singularity Sapiens, designed to generate **fully human single-domain antibodies** for developing a broad range of biologic modalities." (emphasis added).

44.     On information and belief, Leveragen's SSM platform copies and replicates the patented functions and applications of Harbour Antibodies' HCAb Platform and the methods claimed in the Grosveld Patents.

45.     On information and belief, producing single-domain antibodies, for example, NANOBODIES®, using Leveragen's SSM platform involves practicing methods disclosed and claimed in at least one claim of the Grosveld Patents or a non-human mammal disclosed and claimed in at least one claim of the Grosveld Patents, alone or in combination.

46.     On information and belief, Leveragen's SSM platform includes one or more of an SSV1 mouse, an SSV2 mouse, an SSV3 mouse, an SSV4 mouse, an SSV5 mouse, and an SSV6 mouse.

47.     On information and belief, the SSM platform and its component SSV1-6 mice are used by Leveragen and its customers to produce soluble, antigen-specific $V_H$ binding domains or heavy chain only antibodies (HCAb), a type of single-domain antibodies.

48.     On information and belief, the SSM platform includes mice (SSV1-6) with an Igh locus.

49.     On information and belief, the **SSV1 mouse** includes: 27DHs+ 9JHs (full panel of human DH and DJ) + 3VHs:V1-2, V6-1, IGHVII-1-1;

50.     On information and belief, the **SSV2 mouse** includes: SSV1 mouse + 23VHs: IGHV1-18, IGHV1-17, IGHVIII-16-1, IGHV3-16, IGHVII-15-1, IGHV3-15, IGHVIII-13-1, IGHV1-14, IGHV3-13, IGHV3-11, IGHV1-12, IGHVIII-11-1, IGHV5-10-1, IGHV3-64D, IGHV3-7, IGHV3-6, IGHVIII-5-2, IGHVIII-5-1, IGHV2-5, IGHV7-4-1, IGHV4-4, IGHV1-3, IGHVIII-2-1;

51.     On information and belief, the **SSV3 mouse** includes: SSV2 mouse + 30 VHs: IGHV3-35, IGHV7-34-1, IGHV4-34, IGHV3-33-2, IGHV3-33, IGHVII-33-1, IGHVII-30-21, IGHV3-32, IGHV4-30-2, IGHV3-30-2, IGHVII-30-1, IGHV3-30, IGHV3-29, IGHVII-28-1, IGHV4-28, IGHV7-27, IGHVII-26-2, IGHVIII-26-1, IGHV2-26, IGHVIII-25-1, IGHV3-25, IGHV1-24, IGHV3-23, IGHVII-22-1, IGHVIII-22-2, IGHV3-22, IGHV3-21, IGHVII-20-1, IGHV3-20, IGHV3-19

52.     On information and belief, the **SSV4 mouse** includes: SSV3 mouse + 35VHs: IGHV4-59, IGHV1-58, IGHV3-57, IGHV7-56, IGHV4-55, IGHV3-54, IGHVII-53-1, IGHV3-53, IGHV3-52, IGHV8-51-1, IGHVII-51-2, IGHV5-51, IGHV3-50, IGHVII-49-1, IGHV3-49, IGHV3-48, IGHVIII-47-1, IGHV3-47, IGHVII-46-1, IGHV1-46, IGHV1-45, IGHVII-44-2, IGHVIV-44-1, IGHVIII-44, IGHVII-43-1, IGHV3-43, IGHV3-42, IGHV3-41, IGHVII-40-1, IGHV7-40, IGHV4-39, IGHVIII-38-1, IGHV3-38, IGHV3-37, IGHV3-36; and

53.     On information and belief, the **SSV5 mouse** (designed to contain the complete human VH repertoire, 126 VHs, 27DHs, 9JHs genes) includes: SSV4 mouse + 35VHs: IGHV7-81, IGHV4-80, IGHVII-78-1, IGHV3-79, IGHV5-78, IGHVIII-76-1, IGHV3-76, IGHVII-74-1,

IGHV3-75, IGHV3-74, IGHV3-73, IGHV3-72, IGHV3-71, IGHV2-70, IGHV1-69D, IGHV1-69-2, IGHV3-69-1, IGHV2-70D, IGHV1-69, IGHV1-68, IGHVIII-67-4, IGHVIII-67-3, IGHVII-67-1, IGHVIII-67-2, IGHV1-67, IGHV3-66, IGHVII-65-1, IGHV3-65, IGHV3-64, IGHV3-63, IGHVII-62-1, IGHV3-62, IGHV4-61, IGHVII-60-1, IGHV3-60.

54.     On information and belief, the **SSV6 mouse** (designed to include extra human variable gene segments) includes: SSV5 mouse + 14 VH gene segments: IGHV1-8, IGHV3-9, IGVH4-31, IGHV4-30-4, IGHV4-38-2, IGHV3-43D, IGHV3-35, IGHV3-62, IGHV3-16, IGHV3-38, IGHV3-38-3, IGHV1-38-4, IGHV8-51-1, IGHV7-81.

55.     On information and belief, the variable sequences (VHs), the diversity sequences (DHs), and the joining sequences (JHs) of the SSV1-6 mice correspond to the $V_H$ gene segment, at least one D gene segment, and at least one J gene segment respectively disclosed and claimed in the Grosveld Patents.

56.     Leveragen is the Applicant on a PCT Application with International Application No. PCT/US2022/027946, titled "Engineered non-human animals for producing antibodies," filed on May 5, 2022, and of PCT Application No. PCT/US2023/037114, titled "Engineered non-human animals" filed November 9, 2023, collectively ("Leveragen's Patent Applications").

57.     Leveragen's Patent Applications disclose "Various techniques for modifying the genome of non-human animals (e.g., non human animals for immunization) that can be employed to develop an animal capable of producing antibodies (e.g., humanized antibodies, fully mouse heavy chain antibodies, or chimeric heavy chain antibodies)."

58.     On information and belief, Leveragen's Patent Applications disclose applications and methods of use of Leveragen's SSM platform and its component mice, SSV1-6, to produce a

soluble, antigen-specific $V_H$ binding domain performed by Leveragen and Leveragen's customers.

59.    On information and belief, applications and methods of use carried out by Leveragen and Leveragen's customers are methods disclosed and claimed in at least one claim of the Grosveld Patents.

60.    Figure 6 of Leveragen's PCT Application No. PCT/US2022/02794 (reproduced below) is a diagram showing an embodiment of Levragen's SSM platform and its component mice.



Figure 6

61.    Figure 6 of Leveragen's Patent Application shows SSV1-5 mice of Leveragen's SSM platform as including a $V_H$ heavy chain locus comprises a variable region comprising at least one naturally occurring human $V_H$ gene segment (Human VHs) at least one D gene segment (Human DHs), at least one J gene segment (Human Js), and at least one heavy chain constant

region (Mouse IgG1ΔCH1). Additionally, the Mouse IgG1ΔCH1 region does not include a CHI domain.

62.     On information and belief, the mice of Leveragen's SSM platform include a heterologous $V_H$ heavy chain locus comprising a variable region comprising at least one naturally occurring human $V_H$ gene segment, at least one D gene segment, at least one J gene segment, and at least one heavy chain constant region that does not encode a functional $C_H I$ domain, as claimed in at least one claim in the Grosveld Patents.

63.     Leveragen's website advertises that the SSM platform "exclusively generates heavy chain antibodies from the complete human VH repertoire integrated into the mouse Igh locus," as recited in at least one claimed method of the Grosveld Patents. Integration of the human VH repertoire into the mouse Igh locus includes a transgenic animal, such as that which is claimed in the '655 Patent.

64.     Leveragen's website advertises that the SSM platform "ensures faithful expression of human immunoglobulin genes and eliminates interfering conventional antibodies …. Consequently, antibodies produced using this platform exhibit superior diversity, affinity, stability, solubility, modularity, and functionality." Production of antibodies, as advertised by Leveragen, requires recombination of $V_h$, D, and J genes (one from each segment) to create a VDJ coding sequence that is translated into the antibody as recited in at least one claimed method of the Grosveld Patents.

65.     On information and belief, the mice of Leveragen's SSM platform include a heterologous $V_H$ heavy chain locus with a $V_H$ gene segment, D gene segment and J gene segment capable of recombining to form a VDJ coding sequence.

66.     Antibodies used in therapeutic applications typically involve soluble antibodies. Leveragen advertise that its SSM platform can produced "**Single-domain antibodies**, also known as NANOBODIES®," that "exhibit superior diversity, affinity, stability, **solubility**, modularity, and functionality" and are "key components for mRNA and cell therapies." (emphasis added).  Similarly, Leveragen's PCT Application WO2022235988A1 discloses a method of producing a soluble heavy-chain antibody in the engineered non-human animal."

67.     On information and belief, Leveragen's SSM platform includes a recombined $V_h$ that when expressed upon antigen challenge, is capable of forming a soluble, heavy chain-only antibody comprising a soluble, antigen-specific $V_H$ binding domain, and a constant effector region devoid of a functional $C_H I$ domain with an antigen as recited in at least one claimed method of the Grosveld Patents.

68.     Leveragen's PCT Application No. PCT/US2022/02794 discloses "clonotyping" "cell cloning," and "high throughput cloning" of antibody sequences, including a $V_H$ locus ("monoclonal heavy chain antibodies") resulting from recombination between single V, D and J gene segment.

69.     On information and belief, use of Leveragen's SSM platform includes cloning a $V_H$ locus and producing said soluble, antigen specific $V_H$ binding domain from the clone as recited in at least one claimed method of the Grosveld Patents.

70.     On information and belief, use of Leveragen's SSM platform and its component mice include methods to produce a soluble, antigen-specific $V_H$ binding domain that infringe at least one method claim of the Grosveld Patents.

71.     On information and belief, Leveragen's SSM platform and its component mice include transgenic non-human mammals that infringe at least one claim of the Grosveld Patents.

72.     On information and belief, because of the success and innovative nature of Harbour Antibodies' HCAb Platform, Leveragen sought to replicate its proprietary features and functions with its competing and infringing SSM platform.

73.     On information and belief, Leveragen sells, offers for sale, advertises, and uses its SSM platform in the United States.

74.     On information and belief, Leveragen promotes and induces the use of its SSM platform in the United States by its customers.

75.     On information and belief, Leveragen's manufacture, offers for sale, sale, or use of the antibodies infringes at least one claim of the Patents-in-Suit.

76.     On information and belief, the use of Leveragen's SSM platform to generate HCAbs includes a method for the production of a soluble, antigen-specific $V_H$ binding domain comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '522 Patent.

77.     On information and belief, the use of Leveragen's SSM platform to generate HCAbs includes a method for the production of a soluble, antigen-specific $V_H$ binding domain comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '877 Patent.

78.     On information and belief, the use of Leveragen's SSM platform to generate HCAbs includes a method for the production of a soluble, antigen-specific heavy chain only

antibody comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '970 Patent.

79.    On information and belief, the use of Leveragen's SSM platform to generate HCAbs includes a method for the production of a soluble, antigen-specific heavy chain only antibody comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '524 Patent.

80.    On information and belief, the use of Leveragen's SSM platform to generate HCAbs includes a method for the production of a soluble, antigen-specific heavy chain only antibody comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '179 Patent.

81.    On information and belief, the use of at least SSV1 of Leveragen's SSM platform to generate HCAbs includes a transgenic non-human mammal comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '655 Patent.

82.    On information and belief, Leveragen provides instructions, guidance, and direction to its customers on use of its SSM platform.  On information and belief, use of Leveragen's SSM platform in accordance with the instructions, guidance, and direction provided by the Leveragen, infringes at least one claim of the Patents-in-Suit.

83.    On information and belief, Leveragen actively encourages and induces infringement of the Patents-in-Suit by users of its SSM platform at least through its advertisement, sale, and promotion of its SSM platform and through instructions, guidance, and direction provided by its SSM platform on how to use its SSM platform.

84.    On information and belief, end users of the Leveragen's SSM platform directly infringe the Patent-in-Suit by practicing acts encouraged and induced by Leveragen at least in instructions, guidance, and direction provided by Leveragen.

85.    On information and belief, Leveragen has been aware of the plaintiffs' HCAb Platform and the Patents-in-Suit since at least July 18, 2025.

86.    On July 18, 2025, Dr. Ian Liu of Harbour Antibodies sent an email to Dr. Weisheng Victor Chen of Leveragen that identified U.S. Patent Nos. 8,921,522, 9,346,877, 10,906,970, 8,8921,524, 9,353,179, and 10,993,420 and set forth concerns regarding Leveragen's business relating to research revies on and the production of HCAbs.  A copy of Dr. Liu's letter is attached hereto as Exhibit H.

87.    On information and belief, the defendant knew of the Patents-in-Suit and the infringement of the patents by the antibodies prior to filing of this complaint, and, in any event, is on notice of the Patents-in-Suit and its infringement thereof at least as of the date of filing of this complaint.

88.    On information and belief, the defendant is aware, or should be aware, that it is infringing and encouraging and inducing customers and users of its SSM platform to infringe at least one claim of the Patents-in-Suit.

89.    On information and belief, at least due to the defendant's existing knowledge of the Patents-in-Suit and its infringement thereof, the defendant's direct and indirect infringement of the Patents-in-Suit is willful.

90.    The damage and threats to the plaintiffs' business and intellectual property are and have become untenable.

COUNT I
(Infringement of U.S. Patent No. 8,921,522)

91.     The plaintiffs repeat and reallege the allegations in paragraphs 1-90 of this complaint as if fully set forth herein.

92.     On information and belief, the defendant has infringed and is infringing one or more claims of the '522 Patent, including at least claim 1 of the '522 Patent, in violation of 35 U.S.C. § 271(a) by performing a method claimed by the '522 Patent including, but not limited to, use of its SSM platform to produce a soluble, antigen-specific $V_H$ binding domain.

93.     On information and belief, the defendant has infringed and is infringing one or more claims of the '522 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '669 Patent.

94.     The plaintiffs have suffered and will continue to suffer damages as a result of the defendant's infringement of the '522 Patent.

95.     The defendant's infringement of the '522 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendant is enjoined by this Court.

96.     On information and belief, the defendant's infringement of the '522 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

COUNT II
(Infringement of U.S. Patent No. 9,346,877)

97.     The plaintiffs repeat and reallege the allegations in paragraphs 1-96 of this complaint as if fully set forth herein.

98.    On information and belief, the defendant has infringed and is infringing one or more claims of the '877 Patent, including at least claim 1 of the '877 Patent, in violation of 35 U.S.C. § 271(a) by performing a method claimed by the '877 Patent including, but not limited to, use of its SSM platform to produce a soluble, antigen-specific $V_H$ binding domain.

99.    On information and belief, the defendant has infringed and is infringing one or more claims of the '877 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '877 Patent.

100.    The plaintiffs have suffered and will continue to suffer damages as a result of the defendant's infringement of the '877 Patent.

101.    The defendant's infringement of the '877 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendant is enjoined by this Court.

102.    On information and belief, the defendant's infringement of the '877 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT III</u>
(Infringement of U.S. Patent No. 8,921,524)

103.    The plaintiffs repeat and reallege the allegations in paragraphs 1-102 of this complaint as if fully set forth herein.

104.    On information and belief, the defendant has infringed and is infringing one or more claims of the '524 Patent, including at least claim 1 of the '524 Patent, in violation of 35 U.S.C. § 271(a) by performing a method claimed by the '524 Patent including, but not limited to, use of its SSM platform to produce soluble, antigen-specific heavy chain only antibodies.

105.    On information and belief, the defendant has infringed and is infringing one or more claims of the '524 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '524 Patent.

106.    The plaintiffs have suffered and will continue to suffer damages as a result of the defendant's infringement of the '524 Patent.

107.    The defendant's infringement of the '524 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendant is enjoined by this Court.

108.    On information and belief, the defendant's infringement of the '524 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

COUNT IV
(Infringement of U.S. Patent No. 9,353,179)

109.    The plaintiffs repeat and reallege the allegations in paragraphs 1-108 of this complaint as if fully set forth herein.

110.    On information and belief, the defendant has infringed one or more claims of the '179 Patent, including at least claim 1 of the '179 Patent, in violation of 35 U.S.C. § 271(a) by performing a method claimed by the '179 Patent including, but not limited to, use of its SSM platform to produce antigen-specific heavy chain only antibodies.

111.    On information and belief, the defendant has infringed one or more claims of the '179 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '179 Patent.

112.    The plaintiffs have suffered damages as a result of the defendant's infringement of the '179 Patent.

113.    On information and belief, the defendant's infringement of the '179 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT V</u>
(Infringement of U.S. Patent No. 10,906,970)

114.    The plaintiffs repeat and reallege the allegations in paragraphs 1-113 of this complaint as if fully set forth herein.

115.    On information and belief, the defendant has infringed one or more claims of the '970 Patent, including at least claim 1 of the '970 Patent, in violation of 35 U.S.C. § 271(a) by performing a method claimed by the '970 Patent including, but not limited to, use of its SSM platform to produce soluble, antigen-specific heavy chain only antibodies.

116.    On information and belief, the defendant has infringed one or more claims of the '970 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '970 Patent.

117.    The plaintiffs have suffered damages as a result of the defendant's infringement of the '970 Patent.

118.    On information and belief, the defendant's infringement of the '970 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT VI</u>
(Infringement of U.S. Patent No. 9,365,655)

119.    The plaintiffs repeat and reallege the allegations in paragraphs 1-118 of this complaint as if fully set forth herein.

120.    On information and belief, the defendant has infringed and is infringing one or more claims of the '655 Patent, including at least claim 1 of the '655 Patent, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, or importing a transgenic non-human mammal claimed by the '655 Patent including, but not limited to, production and use of at least SSV1 of its SSM platform.

121.    On information and belief, the defendant has infringed and is infringing one or more claims of the '655 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of its SSM platform to infringe one or more claims of the '655 Patent.

122.    The plaintiffs have suffered and will continue to suffer damages as a result of the defendant's infringement of the '655 Patent.

123.    The defendant's infringement of the '655 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendant is enjoined by this Court.

124.    On information and belief, the defendant's infringement of the '655 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT VII</u>
(M.G.L. 93A §1 et seq.)

125.    The plaintiffs repeat and reallege paragraphs 1-124 of this complaint as if they were fully set forth.

126.    The conduct of the defendant constitutes unfair methods of competition or unfair or deceptive acts and practices in the conduct of a trade or business in violation of 93A and regulations promulgated thereunder.

127.    The conduct of defendant was and is willful or knowing and in violation of 93A and regulations promulgated thereunder.

128.    As a direct and proximate result of the conduct of the defendant in violation of 93A, its unfair and deceptive acts and practices, and its willful or knowing violations of 93A and the regulations promulgated thereunder, plaintiffs have been and are being severely damaged.

129.    The plaintiffs are entitled to recover from the defendant damages sustained by the plaintiffs as a result of the defendant's wrongful acts.

130.    The plaintiffs have suffered due to the above-described activities of the defendant and will continue to suffer irreparable injury if the defendant is not preliminarily and permanently enjoined from continuing to infringe and induce infringement of the Patents-in-Suits.

WHEREFORE, the plaintiffs Harbour Antibodies BV and Harbour Antibodies HCAb BV demand judgment against the defendant Leveragen, Inc., as follows:

A.    Enter judgment in favor of the plaintiffs and against the defendant that Leveragen has infringed and is infringing, directly and indirectly, the '522 Patent, the '877 Patent, the '524

Patent, the '179 Patent, the '970 Patent, and the '655 Patent as alleged in Counts I, II, III, IV, V, and VI and that such infringement is willful;

B.      Permanently enjoin Leveragen and its affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Leveragen, from infringing, directly or indirectly, the '522 Patent, the '877 Patent, the '524 Patent, and the '655 Patent; and inducing others to use and perform methods that infringe any claim of the '522 Patent, the '877 Patent, the '524 Patent, and the '655 Patent, until the expirations thereof;

C.      Determine and award the plaintiffs their damages resulting from the defendant's infringement of the '522 Patent, the '877 Patent, the '524 Patent, the '179 Patent, the '970 Patent, and the '655 Patent, including treble damages as a result of defendant's willful infringement.

D.      Award the plaintiffs their reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285;

E.      Entering judgment that the defendant has committed unfair and deceptive acts or practices declared unlawful under 93A, as alleged in Count VII;

F.      Determining and awarding the plaintiffs their damages resulting from the defendant's violation of 93A, as alleged in Count VII of the complaint, plus interest, costs, and attorneys' fees;

G.      Determining that the defendant violated 93A, as alleged in Count VII that the damages be trebled pursuant to M.G.L. ch. 93A, § 11, and that the plaintiffs be awarded their attorneys' fees in connection with this action;

H.    Preliminarily and permanently enjoining the defendant from engaging in unfair and deceptive acts in violation of 93A as alleged in Count VII;

I.    Determining that the defendant engaged in unlawful unfair competition that damaged the plaintiffs and awarding damages to the plaintiffs, plus interest, costs, and attorneys' fees, as a result of those willful actions;

J.    That the plaintiffs be awarded all applicable damages, including exemplary, compensatory, punitive, statutory and treble damages and/or disgorgement of the defendant's profits, resulting from the acts complained of herein;

K.    That the plaintiffs be awarded pre-judgment and post-judgment interest; and

L.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The plaintiffs hereby demand a trial by jury on all issues so triable.

HARBOUR ANTIBODIES BV
HARBOUR ANTIBODIES HCAb BV,

By its attorneys,

/s/  Susan G. L. Glovsky
Susan G. L. Glovsky (BBO# 195880)
susan.glovsky@hbsr.com
Samuel J. Sussman (BBO# 696909)
samuel.sussman@hbsr.com
Hamilton, Brook, Smith & Reynolds, P.C.
155 Seaport Blvd.
Boston, Massachusetts  02210
Telephone:  617-607-5900
Fax:  978-341-0136

Dated: October 14, 2025

4224056.v1